John Michael **SCHLEUTER**, Individually and as Owner/Operator of "Fantasy Sports, Inc.", Fantasy Sports, Inc., and Staci jones, Appellants,

v.

**CITY OF FORT WORTH, Appellee.**

No. 2–96–028–CV.

Court of Appeals of Texas, Fort Worth.

May 29, 1997.

Rehearing Overruled July 31, 1997.

Peter H. Fulton, Robert L. Russell Bush, Bush, Fulton, Hurlbut & Morrison, P.C., Arlington, for Appellants.

Theodore P. Gorski, Marcella Olson, Assistant City Attorneys, Fort Worth, for Appellee.

## OPINION

RICHARDS, Justice.

The trial court[1] issued a permanent injunction to prevent Appellants John Michael Schleuter, Fantasy Sports, Inc., and Staci Jones ("Fantasy Sports") from operating a "sports bar" that featured female dancers dressed in "T-back" bottoms and latex pasties. The trial court found that operation of the "sportsbar" violated a Fort Worth zoning ordinance forbidding sexually oriented busi-

nesses from featuring female dancers with their breasts uncovered within 1,000 feet of a residential neighborhood.

The issue in this appeal from the permanent injunction is whether the trial court erred in upholding the applicable provisions of the Comprehensive Zoning Ordinance (CZO) against claims that the definition of nudity in the ordinance violates the Texas Equal Rights Amendment (TERA). Additionally, Fantasy Sports claims that the CZO restrictions violate the First Amendment, the CZO is unconstitutionally vague, the trial court erred in allowing the City to present evidence in the form of affidavits, the City failed to show imminent harm or that it had no adequate remedy at law, the CZO is arbitrary and unreasonable, and the injunction does not comply with procedural rule requirements. The City brings one cross-point alleging that the trial court abused its discretion in allowing Fantasy Sports to amend its petition to include a TERA count.

We uphold the permanent injunction.

## I. FACTS

In an attempt to mitigate the negative secondary effects of sexually oriented businesses, the City of Fort Worth added sections 18A, 18B, and 18C to Ordinance 3011 of the City Code, the "Comprehensive Zoning Ordinance." A person violates the CZO if he or she operates a "sexually oriented business" within 1000 feet of residentially zoned property. FORT WORTH, TEX., CITY CODE app. A, Ord. 3011 § 18A(B)(2)(d). "Sexually oriented business" is defined as any commercial venture whose operations include the "providing, featuring or offering of employees or entertainment personnel who appear on the premises while in a state of nudity or simulated nudity." *Id.* § 18A(G)(1)(a). "Nudity or state of nudity" is defined as:

appearing while any of the following portions of the human body are less than completely and opaquely covered:

(a) Genitals, whether or not in a state of sexual arousal; or

(b) Pubic region or pubic hair; or

(c) Buttock(s); or

(d) The portions of the female breast(s) beginning from a point immediately above the top of the areola and continuing downward to the lowest portion of the breast(s); or

(e) any combination of the above.

*Id.* § 18A(G)(19). "Simulated nudity" is defined as "a state of dress in which any artificial device or covering is worn on a person and exposed to view so as to simulate an actual 'state of nudity.' " *Id.* § 18A(G)(30).

Section 18B applies only to "Adult Entertainment Cabarets," but places no substantive regulations relevant to this case other than those under section 18A. *See id.* § 18B. Section 18C requires that all proprietors obtain a "Specialized Certificate of Occupancy" (SCO) before operating or continuing the operation of a "sexually oriented business." *Id.* § 18C(A)(1).

On May 11, 1995, Sports Fantasy opened for business at 1541 Merrimac Circle in Fort Worth. Sports Fantasy is a "sports bar" owned and operated by Fantasy Sports, Inc. John Michael Schleuter is the president and majority stockholder in Fantasy Sports, Inc. Schleuter described Sports Fantasy as an "upscale sports bar ... catered to gentlemen clientele." Sports Fantasy featured entertainment in the form of "stage dancing" by "female entertainers." While dancing, the female entertainers would strip their clothing off to the point where they would only be wearing "T-back" bottoms[2] and latex pasties covering only the areola of their breasts. Although he was aware of the zoning ordinances regarding "sexually oriented businesses," Schleuter did not apply for a Specialized Certificate of Occupancy under section 18C because he did not believe Sports Fantasy was a "sexually oriented business." Sports Fantasy was located within 1,000 feet of residentially zoned property.[3]

After Schleuter opened Sports Fantasy, the City filed a petition for a temporary restraining order and a permanent injunction to prohibit the operation of Sports Fantasy. The trial court granted the temporary restraining order against the operation of Sports Fantasy. Fantasy Sports answered the petition and counterclaimed for declaratory relief. As of its last live pleading, Fantasy Sports contended that sections 18A, 18B, and 18C were unconstitutionally vague and violated the First Amendment, TERA, and the Equal Protection Clause of the United States Constitution.

After a bench trial, the trial court entered judgment in favor of the City and a permanent injunction against Fantasy Sports. Fantasy Sports timely perfected an appeal of the trial court's judgment and permanent injunction to this court.

## II. TEXAS EQUAL RIGHTS AMENDMENT

In its fourth point of error, Fantasy Sports claims that the definition of "nudity" in section 18A requires us to hold that the ordinance violates the Equal Rights Amendment of the Texas Constitution.[4] TEX. CONST. art. I, § 3a. Specifically, Fantasy Sports argues that the inclusion of "the portions of the *female* breast(s)" in the definition, without inclusion of a similar provision regulating male breasts, unconstitutionally discriminates against women. *See* CITY CODE § 18(G)(19)(d) (emphasis added).

### A. The Trial Amendment

The record indicates that in a written motion after the bench trial on the merits, Fantasy Sports requested that the trial court allow it to amend its petition to include the TERA claim. The trial court granted Fantasy Sports's request. Thereafter, Fantasy Sports filed a written supplemental answer

---

**2.** There was a dispute about how much of the dancers's buttocks would be uncovered. However, after hearing testimony, the trial judge found that the dancers wore "T-back" bottoms leaving "all or substantially all of their buttocks" uncovered.

**3.** The parties also wrangle over whether Sports Fantasy is located within 1,000 feet of a "park." Because it is uncontroverted that Sports Fantasy

was located too close to a residential neighborhood, we do not address the issue of what constitutes a "park" under the ordinance.

**4.** Although Fantasy Sports's fourth point of error contends that the "ordinance denies women equal protection," all of the argument and authority under that point is directed to a TERA claim. Accordingly, we will not address an equal protection claim.

and counterclaim including a TERA count. In its cross-point, the City argues that the trial court abused its discretion in allowing Fantasy Sports to amend their counterclaim after trial. Therefore, the City contends, the TERA claim is not properly presented in this appeal.

 We will only reverse the decision of a trial court to allow a trial amendment if there was a clear abuse of discretion. *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex. 1980). To determine whether a trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Merely because a trial judge may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

Based on the record before us, we cannot say that the trial court's decision was arbitrary or unreasonable. Accordingly, we will address Fantasy Sports's TERA claim. The City's cross-point is overruled.

B. ANALYSIS

In *Williams v. City of Fort Worth,* 782 S.W.2d 290, 296 (Tex.App.—Fort Worth 1989, writ denied), this court held that the prior ordinance's definition of "state of nudity," which, as in the ordinance challenged in the instant case, included "female breasts" but not "male breasts," violated TERA as a matter of law. *Id.* at 297. This court has since reaffirmed the *Williams* decision in dicta. *Maloy v. City of Lewisville,* 848 S.W.2d 380, 384 (Tex.App.—Fort Worth 1993, no writ) (facially discriminatory defini-

tion of nudity would be unconstitutional under TERA if not for procedural default).

The court in *Williams* determined that "the ordinance discriminates against women on its face in its definition of nudity." [5] *Williams,* 782 S.W.2d at 298. Thus, the court held that the ordinance discriminates *solely* on the basis of gender. *Id.* at 297. After ruling on the first prong of the analysis by holding that the ordinance discriminated against female based solely on gender, the *Williams* court held that the City had not proved that the ordinance was the *only* means of achieving a compelling state interest. *Id.* at 297–98.

We are not unmindful of our general reliance on precedence as a guide for resolution of future issues; however, after careful reconsideration of the question of whether a city may make distinctions between men's and women's breasts in drafting ordinances to regulate sexually oriented businesses, we disapprove of this court's prior decisions in *Williams* and *Maloy* to the extent they hold that the Texas Equal Rights Amendment was intended to apply to an ordinance prohibiting female topless dancing in residential neighborhoods.

 We are not persuaded that a constitutional provision enacted to insure equality under the law to all Texans, regardless of gender, race, creed, or national origin, should be utilized to strike down an ordinance limiting the locations where female topless dancing is permitted. We emphasize that under the present ordinance, Fantasy Sports may open a "sports bar" where Staci Jones and other women may dance topless so long as the bar is not within 1,000 feet of a school, church, public park, or residential property. But, we do not believe that justice or equality is served by application of TERA to this situation.[6]

5. The Dallas Court of Appeals has reached the opposite result in analyzing a nearly identical definition of "nudity or state of nudity." *MJR's Fare of Dallas, Inc. v. City of Dallas,* 792 S.W.2d 569, 575 (Tex.App.—Dallas 1990, writ denied); *see also Messina v. State,* 904 S.W.2d 178 (Tex. App.—Dallas 1995, no pet.) (upholding *MJR* under doctrine of stare decisis). But, we decline

the City's invitation to adopt the reasoning of *MJR* and *Messina.*

6. This is not the first time we have held that a provision of the Texas Constitution giving broader protection than the United States Constitution does not apply to topless dancing ordinances. In *2300, Inc. v. City of Arlington,* 888 S.W.2d 123 (Tex.App.—Fort Worth 1994, no writ), we noted

The Fifth Circuit addressed this very issue in a case where a topless bar challenged a "no touch" zoning ordinance under TERA. In that case, the court commented on what it referred to as the "foolishness" of attempting to apply TERA to sexually oriented business ordinances that treat topless males different from topless females:

> We cannot let pass without comment the energy expended in the "trial" of such issues. Courts need no evidence to prove self-evident truths about the human condition—such as water is wet. Nor should they tarry long with such foolishness and, in the process, trivialize constitutional values intrinsic to our society.

*Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1257 (5th Cir.1995). We agree with that analysis. Fantasy Sports' fourth point of error is overruled.

### III. FIRST AMENDMENT

In its third point of error, Fantasy Sports claims that the sexually oriented business ordinance violates the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution because the ordinance is overly broad and there is no relationship between the ordinance and the governmental interest.

■ Article I, section 8 provides broader rights of free speech than the First Amendment. *Davenport v. Garcia,* 834 S.W.2d 4, 8 (Tex.1992). But, Article I, section 8 does not extend those broader rights to topless dancing. *2300, Inc.,* 888 S.W.2d at 127. Therefore, we will only analyze Fantasy Sports' claim under First Amendment jurisprudence.

#### A. STANDARD OF REVIEW

■ Under the First Amendment, a zoning ordinance limiting the permissible locations for sexually oriented businesses is properly analyzed as a time, place, and manner restriction. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29, 37 (1986); *Lakeland Lounge v. City of Jackson,* 973 F.2d 1255, 1257 (5th Cir.1992), *cert. denied,* 507 U.S.

1030, 113 S.Ct. 1845, 123 L.Ed.2d 469 (1993); *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1273 (5th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *2300, Inc.,* 888 S.W.2d at 127–28. Time, place, and manner restrictions pass constitutional muster if they are: (1) content-neutral; (2) narrowly tailored to serve a significant government interest; and (3) leave open ample alternative avenues of communication. *City of Renton,* 475 U.S. at 47, 106 S.Ct. at 928, 89 L.Ed.2d at 37; *Lakeland Lounge,* 973 F.2d at 1257; *SDJ,* 837 F.2d at 1273; *2300, Inc.,* 888 S.W.2d at 127–28.

#### B. THE APPLICATION OF THE LAW TO THIS CASE

##### 1) Content-Neutral

■ For this ordinance to be content-neutral, the City's "predominant concern" in passing the ordinance must have been to limit the negative secondary effects of sexually oriented businesses. *Lakeland Lounge,* 973 F.2d at 1257–58; *SDJ,* 837 F.2d at 1273.

When the City originally enacted section 18A, it reviewed studies compiled from several cities detailing the negative secondary effects of sexually oriented businesses. The City did not conduct new studies when it subsequently amended section 18A and added sections 18B and 18C. Fantasy Sports contends that because the City did not conduct new studies each time that it amended the ordinance, the City's "predominant concern" could not have been to limit negative secondary effects.

■ We can find no authority standing for the proposition that the City must conduct a new study into secondary effects before amending the sexually oriented business ordinance. As the Supreme Court noted:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed

that Article I, section 8 of the Texas Constitution provides greater protection than does the First Amendment to our federal constitution. *Id.* at

127. Nevertheless, we held that Article I, section 8 is not applicable to "restrictions" on topless dancing. *Id.*

to be relevant to the problem that the city addresses.

*City of Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931, 89 L.Ed.2d at 40.

■ Further, the trial court entered findings of fact indicating that the City relied on studies, its on-going experiences, and public comment when adopting the ordinances *and their amendments.* These findings of fact were supported by the testimony of Fort Worth Assistant City Manager Mike Groomer. Thus, there is more than a scintilla of evidence to support these findings. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). Moreover, considering all the evidence, we do not believe the evidence supporting these findings is so weak or the evidence to the contrary is so overwhelming that they should be set aside and a new trial ordered.[7] *See Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ Accordingly, the record supports the conclusion that the City's "predominant concern" was mitigating secondary effects because the City relied on sufficient evidence.

### 2) *Narrowly Tailored*

Fantasy Sports claims that "less restrictive means," i.e. security guards and better lighting, could be used to achieve the City's interests. Therefore, Fantasy Sports contends, the ordinance is not "narrowly tailored."

■ The Fifth Circuit has specifically decided that emphasis on "least restrictive means" is inappropriate in this context. *SDJ,* 837 F.2d at 1276. Instead, "an ordinance is sufficiently well tailored if it effectively promotes the government's stated interest." *Id.* (citing *United States v. Albertini,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). Numerous decisions indicate that distance regulations, such as the 1,000 foot restriction here, are a constitutional means of mitigating the negative secondary effects of sexually oriented businesses. *E.g., City of Renton,* 475 U.S. at

52, 106 S.Ct. at 931, 89 L.Ed.2d at 41; *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71–72, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310, 326–27 (1976); *SDJ,* 837 F.2d at 1275–76; *Lindsay v. Papageorgiou,* 751 S.W.2d 544, 549–50 (Tex.App.—Houston [1st Dist.] 1988, writ denied). We see no reason to depart from this line of cases, and we hold that the ordinance's 1,000 foot spacing requirement is narrowly tailored to achieve the City's interest in mitigating the secondary effects of sexually oriented businesses.

Additionally, Fantasy Sports claims that the ordinance definition of "public park" is not narrowly tailored. Their claim rests on the assertion that under the definition, *any* street or sidewalk that *could* be used for recreational purposes would be a public park. To the contrary, the ordinance indicates that a "public park" is "any land area dedicated to and/or maintained by the city *for traditional park-like recreational purposes.*" CITY CODE, app. A., Ord. 3011 § 18A(G)(23) (emphasis added). Thus, streets and sidewalks would not be "public parks" because they are not "dedicated and maintained" for "recreational uses." Therefore, we hold that the ordinance's definition of "public park" is narrowly tailored.

### 3) *Alternative Channels for Communication*

Fantasy Sports argues that the ordinance does not survive First Amendment scrutiny because it does not leave a sufficient number of locations available for sexually oriented businesses.

■ Fantasy Sports has the burden of proving that the ordinance denies them a reasonable opportunity to open and operate a sexually oriented business by failing to provide reasonable alternative avenues of communication. *Woodall v. City of El Paso,* 49 F.3d 1120, 1126 (5th Cir.) ("*Woodall III*"), *cert. denied,* —— U.S. ——, 116 S.Ct. 516, 133 L.Ed.2d 425 (1995). To meet its burden, Fantasy Sports must show that the areas left

---

**7.** While we have to detail the evidence upon which we rely when reversing a trial court finding based on insufficiency of the evidence, we need not detail supporting evidence when up-

holding the factual sufficiency of the evidence underlying a trial court's judgment. *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 794 (Tex. 1994).

available are inadequate to satisfy the demand for sexually oriented business locations. *Id.*

 Land is "available" for the purposes of the First Amendment only if it does not have physical or legal characteristics that make it impossible for an adult business to locate there. *Lakeland Lounge,* 973 F.2d at 1260 (*quoting Woodall v. City of El Paso,* 950 F.2d 255, 263 (5th Cir.) ("*Woodall I*"), *modified,* 959 F.2d 1305 (5th Cir.1992) (per curiam) ("*Woodall II*"), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992)). Thus, "land with physical characteristics that render it unavailable for *any* kind of development, or legal characteristics that exclude adult businesses may not be considered 'available' for constitutional purposes." *Woodall II,* 959 F.2d at 1306 (emphasis added). Under this standard, areas not readily accessible to the public, areas developed in a manner unsuitable for any generic commercial business, and areas lacking in proper infrastructure are not "available" for purposes of the analysis.[8] *Woodall III,* 49 F.3d at 1124.

In support of this claim, Fantasy Sports points to the testimony of its expert real estate appraiser, Kelly Miller. Miller testified that the portion of the available sites near Alliance Airport was not feasible for use because it was without public access, utilities, or improvements. Miller's testimony only concerned the tracts of available land near Alliance Airport. On the other hand, an examination of City's Exhibit 31 indicates that there are sites available for sexually oriented businesses scattered throughout Fort Worth.

Apparently not accepting Miller's testimony, the trial court entered the following findings of fact:

> 128. At least 20 sites ... exist that are legally and physically capable of being used to locate at least one new sexually oriented business in conformity with the Ordinances.
>
> . . . .
>
> 130. At least eight existing sexually oriented business locations could be legally transferred to a new owner.

These findings of fact are supported by the testimony of Ben Dyess and Tom Kyser, the City's appraisal witnesses. Thus, there is more than a scintilla of evidence to support these findings. *See Browning–Ferris,* 865 S.W.2d at 928. Moreover, considering all the evidence, we do not believe that the evidence supporting these findings is so weak or that the evidence to the contrary is so overwhelming that they should be set aside and a new

8. Fantasy Sports also argues that the ordinance does not leave ample alternative channels for communication because the available properties are "outside the central core of the City where [Fantasy Sports's] potential customers are located." Fantasy Sports relies exclusively on *Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982), in support of its position. In *Basiardanes,* the court struck down an ordinance that relegated sexually oriented businesses to "ten percent to fifteen percent of the city ... in ... industrial zones *at a great distance from other consumer-oriented establishments.* ... [where] [f]ew access roads lead .... [in locations that are] poorly lit, *barren of structures suitable for showing films,* and perhaps unsafe." *Id.* at 1214 (emphasis added). Under these circumstances, the court held that the effect of the ordinance was "to render it all but impossible in Galveston for a proprietor to open a theater to exhibit adult films or for patrons to attend them." *Id.* It is doubtful that this economic impact holding is still authoritative in light of *City of Renton* and its progeny. This is illustrated by the *Woodall* trilogy of cases from the Fifth Circuit.

In *Woodall I,* the Fifth Circuit relied on *Basiardanes* as standing for the proposition that the "economic character" of the land could be considered in determining whether land was "available" as an alternative avenue. *See Woodall I,* 950 F.2d at 260–61. But, the court later withdrew that portion of the opinion as unnecessary to decide the case. *See Woodall II,* 959 F.2d at 1306. In *Woodall III,* the court completely abandoned the economic impact analysis by saying "[i]t is not relevant that a relocation site will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business." *Woodall III,* 49 F.3d at 1124; *see also City of Renton,* 475 U.S. at 54, 106 S.Ct. at 932, 89 L.Ed.2d at 42 (economic impact is irrelevant in analysis); *Lakeland Lounge,* 973 F.2d at 1260 ("[t]he fact that these locations do not seem particularly desirable for economic reasons does not matter"); *SDJ,* 837 F.2d at 1276–77 ("alternative sites need not be commercially viable"); *Williams,* 782 S.W.2d at 294 (relocation sites need not be commercially viable); *Lindsay,* 751 S.W.2d at 550 (county under no duty to provide sexually oriented business with commercially viable location).

trial ordered. *See Jaffe Aircraft,* 867 S.W.2d at 29; *Garza,* 395 S.W.2d at 823.

 Based on the record before us, we hold that Fantasy Sports has failed to meet its burden in showing that the areas left available are inadequate to satisfy the demand for sexually oriented business locations. *See Woodall III,* 49 F.3d at 1126. Although Miller testified that a portion of the available land lacked the necessary infrastructure and access to be "available" for a sexually oriented business, Fantasy Sports has not pointed to any other evidence making the same findings regarding the other sites throughout Fort Worth. Further, Fantasy Sports has not pointed to any evidence showing that the demand for sexually oriented business locations exceeds the number of locations available. Therefore, Fantasy Sports has not proved that there are not an adequate number of potential locations left available to them by the ordinance.

The Fifth Circuit's opinion in *Woodall III* is instructive in this case. In that case, the adult business operators showed that some of the "available" sites had existing structures that were unsuitable for *any* small retail business. *See id.* The court noted that "even if we agreed that these sites suffered from defects so severe as to take them out of the commercial real estate market and render them physically unavailable, there was no evidence that surrounding sites suffered from the same impediments." *Id.* Thus, the court held that the adult business operators had failed to satisfy their burden. *Id.*

In this case, just as in *Woodall III,* Fantasy Sports has not proved that all, or even most, of the "available" sites are physically unavailable. *See Lakeland Lounge,* 973 F.2d at 1260. Moreover, it did not show that demand for sites for sexually oriented businesses is greater than the number of sites. *See Woodall III,* 49 F.3d at 1120. Accordingly, we hold that the ordinance leaves open a sufficient number of alternative channels for communication.

## C. CONCLUSION

Because we hold that the CZO restriction on sexually oriented businesses: (1) is content-neutral because the City's predominant concern in passing the ordinance was to limit the negative secondary effects of sexually oriented businesses; (2) is narrowly tailored because it effectively promotes the City's stated interest; and (3) provides alternative channels for communication because Fantasy Sports has not proved that there are an insufficient number of available sites that do not have legal or physical barriers to development, Fantasy Sports's third point of error is overruled.

## IV. ADMISSION OF THE AFFIDAVITS

In its first point of error, Fantasy Sports argues that the court erred in admitting affidavits that appear in the record as City's Exhibits 2, 7, 9, 11, 13, 14, 16, 18–22, 34–36, and 43. The City concedes error on this point but contends that Fantasy Sports has not shown reversible error.

 To obtain reversal based upon error of the trial court in admission of evidence, Fantasy Sports has a two-pronged burden. First, Fantasy Sports must show that there was, in fact, error, and secondly, that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex. R. App. P.81(b)(1); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *Cadle Co. v. Bankston & Lobingier,* 868 S.W.2d 918, 924 (Tex.App.—Ft.Worth), *writ denied per curiam,* 893 S.W.2d 949 (Tex.1994), *cert. denied,* — U.S. ——, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995). Further, Fantasy Sports must show that the whole case turned on the admission of the affidavits. *Service Lloyds Ins. Co. v. Martin,* 855 S.W.2d 816, 822 (Tex.App.—Dallas 1993, no writ).

 Ordinarily, erroneous admission of evidence is not reversible where the evidence in question is cumulative and not controlling on a material issue dispositive of the case. *Gee,* 765 S.W.2d at 396. The erroneous admission of evidence that is cumulative of properly admitted evidence is not reversible error. *Id.*

 Because Fantasy Sports alleges error in the admission of several exhibits, we must consider the cumulative effect of the asserted errors in light of the entire record

to determine if the cumulative effect caused the rendition of an improper judgment. *See Lorusso v. Members Mutual Ins. Co.,* 603 S.W.2d 818, 819–21 (Tex.1980); *Southern Pac. Co. v. Hubbard,* 156 Tex. 525, 297 S.W.2d 120, 125 (1956).

■ Fantasy Sports timely objected to admission of the affidavits as hearsay. The court overruled the objection without articulating an exception to the hearsay rule that would permit admission of the affidavits. We accept the City's concession that admission of the affidavits was error. Admission of these out-of-court statements without a showing that the declarants were unavailable or that a hearsay exception applied was error. TEX.R. CIV. EVID. 802. Fantasy Sports has satisfied the first prong of the analysis. Now we must determine whether the cumulative effect of these errors was reasonably calculated to cause and probably did cause the rendition of an improper judgment. We hold that they did not.

Without providing any argument or authority supporting its contention, Fantasy Sports's brief merely gives the conclusory statement that "[t]his error was reasonably calculated to cause the rendition of an improper judgment and probably did cause an improper judgment." [9] The City's brief, on the other hand, examines the exhibits individually and explains why admission of each one was not harmful error. We will do the same.

City's Exhibit 2 is an affidavit of the City Secretary certifying that City's Exhibits 3–6 were true and accurate copies of the various sexually oriented business provisions of the ordinance. After admission of these sections of the ordinance by the trial court, Fantasy Sports offered the same sections and had them admitted into evidence. Fantasy Sports does not claim that City's Exhibits 3–6 were unauthentic or different from its versions that were admitted into evidence. Therefore, Fantasy Sports has shown no harm from City's Exhibit 2 because the erroneous admission of evidence that is cumula-

tive of properly admitted evidence is not reversible error. *Gee,* 765 S.W.2d at 396.

City's Exhibit 7 is an affidavit of the Director of the City Department of Development stating that Fantasy Sports did not have a valid Specialized Certificate of Occupancy. Michael Schleuter himself testified to this. Thus, Fantasy Sports has shown no harm from City's Exhibit 7. *Id.*

City's Exhibit 9 is an affidavit of Gary Caldwell, the City's Chief Building Inspector. Caldwell later testified to all of the information in the affidavit. Fantasy Sports has shown no harm from City's Exhibit 9. *Id.*

City's Exhibits 11 and 35 are affidavits of Robert P. Riley, Superintendent of Park Planning and Resource Management for the City, indicating that Sports Fantasy was located within 1,000 feet of Forrest Park. City's Exhibit 36 is an affidavit of Richard Zavala, Director of the City Parks and Community Services Department, also indicating that Sports Fantasy was located within 1,000 feet of Forrest Park. Zavala testified to that fact. Fantasy Sports has shown no harm from City's Exhibits 11, 35, and 36. *Id.*

City's Exhibit 13 is an affidavit of Walter Head, the Chief Plans Examiner of the City Department of Development, relating to Fantasy Sports's attempt to obtain a permit to build a bar on the second floor of Sports Fantasy. That information is not controlling of a material issue dispositive of this case. Fantasy Sports has shown no harm from City's Exhibit 13. *Id.*

City's Exhibit 14 is an affidavit of Fort Worth Deputy Marshal Jack Scott indicating that he served the manager of Sports Fantasy with a letter from City official Michael Groomer notifying Fantasy Sports that Sports Fantasy was located within 1,000 feet of residentially zoned property. The actual letter was later offered by Fantasy Sports and admitted into evidence. Moreover, whether Fantasy Sports was actually served with the letter is not controlling of a material issue dispositive in this case. Fantasy

---

9. *This point is arguably waived as inadequately briefed. See* TEX.R.APP. P. 74(f) ("A brief of the argument .... shall include: (1) a fair, condensed statement of the facts pertinent to such points, ...; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue.").

Sports has shown no harm from City's Exhibit 14. *Id.*

City's Exhibit 16 is an affidavit of Fort Worth Deputy Marshal Kurt Harris indicating that he served the manager of Sports Fantasy with a letter from City official Terry Vernon detailing the conduct that the City believed to be in violation of the CZO. But the letter only listed conclusions that the activities at Sports Fantasy constituted "sexually oriented entertainment" and "simulated nudity." The letter did not provide any factual allegations that are controlling of a material issues dispositive in this case. Moreover, whether Fantasy Sports was actually served with the letter is not controlling of a material issue dispositive in this case. Fantasy Sports has shown no harm from City's Exhibit 16. *Id.*

City's Exhibits 18–22 are affidavits of several City Vice Squad officers relating the type of entertainment that they witnessed at Sports Fantasy's opening night. Although the affidavits relate some conduct that is not found elsewhere in the record, i.e. intoxicated dancers and dancers soliciting drinks from patrons, evidence of such conduct is not controlling of a material issue dispositive in this case. As for the rest of the factual allegations in the affidavits, Michael Schleuter himself testified about the state of undress of the dancers and the type of "entertainment" that they provided to patrons. Fantasy Sports has shown no harm from City's Exhibits 18–22. *Id.*

City's Exhibit 34 is an affidavit from Dr. Hardy Murphy, Associate Superintendent of the Fort Worth I.S.D., indicating that Sports Fantasy was located within 1,000 feet of a school known as "The Excel Center." City's Exhibit 43 is an affidavit from Gary Caldwell relating the same information. The trial court found that Sports Fantasy was within 1,000 feet of residentially zoned property. Therefore, whether "The Excel Center" was a "school" under the ordinance is not controlling of a material issue dispositive of this case. Fantasy Sports has shown no harm from City's Exhibits 34 and 43. *Id.*

We hold that Fantasy Sports has not shown that admission of any of the affidavits individually was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* Further, we hold that Fantasy Sports has not shown that the cumulative effect of these errors was to cause the rendition of an improper judgment. *Lorusso,* 603 S.W.2d at 819–21; *Southern Pac. Co.,* 297 S.W.2d at 125. Fantasy Sports's first point of error is overruled.

## V. VAGUENESS

In its second point of error, Fantasy Sports contends the trial court erred in enforcing the CZO because it is vague as a matter of law. Specifically, Fantasy Sports contends that the ordinance does not give fair warning of what degree of exposure of the female breast is included in the definitions of "nudity" or "simulated nudity." In support of its position, Fantasy Sports relies solely on the testimony of Dr. Richard Schmitt, the City's expert witness. Dr. Schmitt, a psychologist, testified that a man with breast implants might come within the definition of "nudity," while a "flat-chested boy-looking woman" might not. Therefore, Fantasy Sports argues, the ordinance does not give fair warning of what degree of exposure constitutes "nudity."

■ "A defendant cannot successfully challenge the statute for vagueness when it clearly applies to his conduct." *Tyrone v. State,* 854 S.W.2d 153, 155 (Tex.App.—Fort Worth 1993, pet. ref'd). Thus, Fantasy Sports cannot prevail on its vagueness claim by showing that the ordinance would be unconstitutional as applied to a hypothetical "flat-chested boy-looking woman" or a hypothetical "man with breast implants." Fantasy Sports must show that the ordinance is unconstitutionally vague as applied to its activities. *See id.*

■ Moreover, the proper standard to determine if the ordinance is unconstitutionally vague is whether the ordinance gives a person of ordinary intelligence fair notice that person's contemplated conduct is forbidden. *Stansberry v. Holmes,* 613 F.2d 1285, 1289 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980); *Ex parte Luster,* 846 S.W.2d 928, 930 (Tex.App.—Fort Worth 1993, pet. ref'd). To satisfy this stan-

dard, the ordinance need only give fair warning of the conduct proscribed in light of common understanding and practices. *Stansberry,* 613 F.2d at 1289; *State v. Garcia,* 823 S.W.2d 793, 798 (Tex.App.—San Antonio 1992, pet. ref'd). In light of common understanding, a reasonable person of ordinary intelligence would understand the phrase "[t]he portions of the female breast(s) beginning from a point immediately above the top of the areola and continuing downward to the lowest portion of the breast(s)" to include the state of undress of the female dancers at Sports Fantasy. Fantasy Sports's second point of error is overruled.

## VI. IMMINENT HARM—ADEQUATE REMEDY AT LAW

In its fifth point of error, Fantasy Sports claims that the trial court erred in granting a permanent injunction because the evidence was insufficient of imminent harm or irreparable injury to the City. Further, Fantasy Sports also claims the evidence shows that the City had an adequate remedy at law—a $2,000.00 per day fine.

We have previously held that "a city that seeks to enjoin a violation of its zoning ordinance does not need to prove that its violation would damage it or its residents . . . proof of the violation of the ordinance makes out a sufficient case for injunctive relief." *Maloy,* 848 S.W.2d at 385. Further, the legislature has specifically provided that "[a] municipality or county may sue in the district court for an injunction to prohibit the violation of [a properly enacted sexually oriented business ordinance]." TEX. LOC. GOV'T CODE ANN. § 243.010(a) (Vernon Supp.1997). Because the zoning authorization statute specifically authorizes the remedy of injunction, a court may issue the injunction regardless of whether there is an adequate remedy at law. *See* 77 TEX. JUR. 3d *Zoning* § 146 (1991). Fantasy Sports's fifth point of error is overruled.

## VII. ARBITRARY AND UNREASONABLE

In its sixth point of error, Fantasy Sports argues that the CZO is arbitrary and unreasonable both generally and as applied to Sports Fantasy in particular. The Texas Supreme Court has held that "[i]f the evidence is conclusive that a zoning ordinance is arbitrary and unreasonable, generally or as to particular property, it is the duty of the courts to refuse to enforce it." *City of Fort Worth v. Johnson,* 388 S.W.2d 400, 402 (Tex. 1964). Fantasy Sports points to three areas in which the ordinance is allegedly arbitrary and unreasonable.

First, Fantasy Sports claims that the ordinance is arbitrary and unreasonable generally because "[t]he ordinance was not based on any credible, objective data." But, as we have noted above, the City relied on studies, its ongoing experiences, and public comment when adopting the ordinances and their amendments. Moreover, there is no requirement that the City conduct new studies or produce independent evidence before enacting a sexually oriented business ordinance. *See City of Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931, 89 L.Ed.2d at 40.

Second, Fantasy Sports claims the ordinance is arbitrary and unreasonable generally because "there is virtually no land available for new sexually oriented businesses in Fort Worth." We have specifically held otherwise in our discussion of alternative channels for communication. Third, Fantasy Sports claims that the ordinance is arbitrary and unreasonable for the particular property where Sports Fantasy was located. Fantasy Sports bases this claim on the fact that a river runs between Sports Fantasy and the residential neighborhood. Thus, Fantasy Sports argues, a natural barrier would prevent Sports Fantasy from having negative secondary effects on the residential neighborhood.

The CZO provides "measurement of the [1000] foot distance shall be made in a straight line, *without regard to intervening structures or objects.*" CITY CODE app. A, Ord. 3011 § 18A(B)(3) (emphasis added). Thus, the ordinance does not provide for a different measurement if there is a "natural barrier" between the sexually oriented business and the residential neighborhood. Fantasy Sports points us to no authority standing for the proposition that this method of

measurement is arbitrary or unreasonable. Fantasy Sports's sixth point of error is overruled.

## VIII. RULE 683

In its seventh point of error, Fantasy Sports argues that the trial court erred in signing a permanent injunction that did not comply with Rule of Civil Procedure 683.

▪ Rule 683 provides that all orders granting an injunction shall: (1) set forth the reasons for the injunction's issuance; (2) be specific in terms; and (3) describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. Tex.R. Civ. Proc. 683. We hold that the trial court's order complies with these requirements.

The trial court's order provides:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT RESPONDENT Fantasy Sports, Inc., ... HEREBY ARE, COMMANDED TO CEASE, DESIST AND REFRAIN PERMANENTLY ... from violating, directly or indirectly, Sections 18A, 18B, and/or 18C.... More Specifically, Respondent Fantasy Sports, Inc .... [is] restrained from the providing, featuring or offering of employees or entertainment personnel who appear while in a state of nudity, or simulated nudity or while providing sexually oriented performances or entertainment for customers....

The order goes on to give specific definitions of "sexually oriented entertainment," "entertainment personnel," "nudity or state of nudity," and "simulated nudity." Further, Fantasy Sports was enjoined from operating a sexually oriented business without receiving a Specialized Certificate of Occupancy as required by section 18C. In sum, the order is as "definite, clear and precise as possible" because it informs Fantasy Sports of the specific acts they are restrained from doing without calling on them to make inferences or conclusions about conduct upon which people might differ. *San Antonio Bar Ass'n v.*

*Guardian Abstract & Title Co.,* 156 Tex. 7, 291 S.W.2d 697, 702 (1956). Fantasy Sports's seventh point of error is overruled.

Having overruled all seven of Fantasy Sports's points of error, we affirm the judgment and permanent injunction of the trial court.

LIVINGSTON, J., filed a concurring and dissenting opinion.

DAUPHINOT, J., filed a concurring and dissenting opinion.

LIVINGSTON, Justice, concurring and dissenting.

I concur in the conclusion and result reached by the majority because I agree that Fantasy Sports failed to properly obtain a Specialized Certificate of Occupancy and operated a sexually oriented business within 1,000 feet of a residential neighborhood. However, I believe that paragraph "d" of Section 18A(G)(19) of the Fort Worth City Code violates the Texas Equal Rights Amendment ("TERA") and is therefore unconstitutional.

## DISCUSSION

### *The Ordinance and the Texas Equal Rights Amendment*

Under the Comprehensive Zoning Ordinance ("CZO"), "Nudity or state of nudity" is defined as:

appearing while any of the following portions of the human body are less than completely and opaquely covered:

(a) Genitals, whether or not in a state of sexual arousal; or

(b) Pubic region or pubic hair; or

(c) Buttock(s); or

(d) *The portions of the female breast(s)* beginning from a point immediately above the top of the areola and continuing downward to the lowest portion of the breast(s); or

(e) any combination of the above.[1]

1. Tex. Const. art. I, § 3a. Fort Worth, Tex., City Code app. A, Ord. 3011 § 18A(G)(19) (emphasis added).

In its fourth point of error, Fantasy Sports claims the definition of "nudity" in section 18A requires us to find that the ordinance violates the Equal Rights Amendment of the Texas Constitution.[2] Specifically, Fantasy Sports argues that the inclusion of "[t]he portions of the *female* breast(s)" in the definition without inclusion of a similar provision regulating male breasts, discriminates against women.[3] TERA provides that "[e]quality under the law shall not be denied or abridged because of sex."[4] Under TERA, classifications based on gender are suspect and subject to strict scrutiny.[5]

To analyze a classification under TERA, we must apply *In re McLean*'s two step analysis. First, we should determine whether the law discriminates against one sex *solely* on the basis of gender.[6] Second, if we find that the law discriminates based solely on gender, we should only uphold it if the proponent of the law can prove that there is no other manner to protect the State's compelling interest in the law.[7]

### 1) The Burden of Proof

The *Williams* court previously held that "[t]he burden of proof is initially on the complainant to prove such discrimination exists."[8] The City relies on a Dallas Court of Appeals case in contending that this statement requires Fantasy Sports to prove that the CZO discriminates against women based *solely* on gender.[9] I believe the Dallas Court of Appeals opinion in *MJR* misconstrued *Williams*.

In *In re McLean*, the Supreme Court made it clear that the trial court was to determine whether the law discriminated based solely on gender. The Supreme Court did not, however, hold that the complainant had a burden beyond putting the discriminatory language into evidence. In fact, the Supreme Court specifically examined the law in question·to determine if the first prong of the analysis was met.[10] The Supreme Court did not require the plaintiff in *McLean* to then bring forth any evidence of impermissible reasons for the statutory language.

Indeed, this is the only interpretation of TERA and *McLean* that makes sense. To hold otherwise would require Fantasy Sports to somehow prove that the City had discriminatory intent when it passed the ordinance. This burden would be so severe that it is hard to imagine a plaintiff who could meet it. To impose this severe burden on the plaintiff would render TERA's guarantee of strict scrutiny for gender classifications useless.[11]

---

2. TEX. CONST. art. I, § 3a. Although Fantasy Sports's fourth point of error contends that the "ordinance denies women equal protection," the argument and authority under that point is directed to a TERA claim. Fantasy Sports specifically cites TERA in the first sentence of its brief under this point. Accordingly, I will not address an Equal Protection claim.

3. *See* CITY CODE § 18A(G)(19)(d) (emphasis added).

4. TEX. CONST. art. I, § 3a.

5. *In re McLean*, 725 S.W.2d 696, 698 (Tex.1987). While TERA requires strict scrutiny, the Equal Protection clause of the Fourteenth Amendment and the due process clause of the Fifth Amendment to the United States Constitution require only intermediate scrutiny in gender discrimination cases. *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1279–80 (5th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). This is one of the situations where the Texas Constitution provides more protection than the United States Constitution. *See In re McLean*, 725 S.W.2d at 697 (TERA provides more specific protection than either Due Process or Equal Protection guarantees of Texas or United States constitutions).

6. *In re McLean*, 725 S.W.2d at 697.

7. *Id.* at 698.

8. *Williams v. City of Fort Worth*, 782 S.W.2d 290, 296 (Tex.App.—Fort Worth 1989, writ denied).

9. *See MJR's Fare of Dallas Inc. v. City of Dallas*, 792 S.W.2d 569, 575 (Tex.App.—Dallas 1990, writ denied) (op. on reh'g) (rejecting claim because bar owner "failed to meet its burden of proving that law discriminated against females solely on the basis of gender").

10. *See In re McLean*, 725 S.W.2d at 697.

11. The federal analog of strict scrutiny under TERA is equal protection analysis of racial classifications and discrimination. Under the Equal Protection clause, a law that discriminates against people based on race is subject to strict scrutiny. *See generally* 3 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 18.3, 15–16 (2d

Fantasy Sports's burden to "prove such discrimination exists" was satisfied when it put § 18A into evidence [12] because the discriminatory language was clear on the face of the ordinance. Thus, I would specifically hold that Fantasy Sports did not lose its TERA claim by failing to meet its "burden of proof."

### 2) Williams

In *Williams*, this court held that the prior ordinance's definition of "state of nudity,"

which specified "female breasts" but not "male breasts," [13] violated TERA as a matter of law.[14] We have since reaffirmed our endorsement of the *Williams* decision in dicta.[15]

In *Williams*, this court previously held that "the ordinance discriminates against women on its face in its definition of nudity." [16] Thus, the *Williams* court held that the ordinance discriminates *solely* on the basis of gender.[17] After ruling on the first prong of the analysis in favor of Williams by

---

ed.1992) (discussing strict scrutiny standard). Further, if the discrimination is clear from the face of the law, courts will apply the strict scrutiny standard without any further inquiry into the intent of the drafters. *See generally* R. ROTUNDA & J. NOWAK at § 18.4, 41–42 (discussing proof of discrimination). However, if a facially neutral statute is discriminatory in its application, courts must look to the intent behind the statute. *See generally id.*

Were this a case where discrimination was not apparent from the language of the ordinance, but rather where a facially neutral ordinance resulted in discriminatory effects, the plaintiff would have a higher burden of proving that the discrimination was based *solely* on gender.

12. Specifically, Fantasy Sports pled in its First Supplemental Answer and Counterclaim:

The City of Fort Worth's zoning ordinance is unconstitutional because it violates the Equal Rights Amendment to the Texas Constitution, Article 1, Section 3a.. [sic] The current definition contained in the City's Ordinances prohibit female dancers such as Staci Jones from exposing any portion of their breasts from the top of the aerola [sic] to the bottom of the breast under Sports Fantasy's current license but do not prohibit male dancers from exposing any portion of their breasts.

Further, the ordinance in question was offered and admitted into evidence.

13. In particular, the ordinance in effect at the time prohibited "sexually oriented business[es]" from operating within 1,000 feet of a church, school, residentially zoned property, or a public park. FORT WORTH, TEX., CITY CODE Ord. 9957 § 1(C)(1) (repealed). "Sexually oriented business" was defined to include "adult cabaret." FORT WORTH, TEX., CITY CODE Ord. 9957 § 1(B)(11) (repealed). "Adult Cabaret" was defined as: "a *nightclub, bar, restaurant, or similar commercial* establishment which regularly features: (a) persons who appear in a state of nudity." FORT WORTH, TEX., CITY CODE Ord. 9957 § 1(B)(3)(a) (repealed). "Nudity or state of nudity" was defined as:

less than completely and opaquely covered:
 a) Human genitals, pubic region or pubic hair,

b) Human buttock,
c)*Female breast or breasts* below a point immediately above the top of the areola, or
d) any combination of the foregoing.

FORT WORTH, TEX., CITY CODE Ord. 9957 § 1(B)(9) (repealed) (emphasis added).

14. *Williams*, 782 S.W.2d at 297. The City claims that it amended the CZO "to cure the deficiencies found by this court to exist in Ordinance 9957." However, the definition of nudity specifying "female breast" found unconstitutional in *Williams* is repeated nearly verbatim in the new ordinance. *Compare* CITY CODE Ord. 3011 § 18A(G)(19); *with* CITY CODE Ord. 9957 § 1(B)(9) (repealed).

15. *Maloy v. City of Lewisville*, 848 S.W.2d 380, 384 (Tex.App.—Fort Worth 1993, no writ) (facially discriminatory definition of nudity would be unconstitutional under TERA if not for procedural default).

16. *Williams*, 782 S.W.2d at 298. The Dallas court has reached the opposite result in analyzing a nearly identical definition of "nudity or state of nudity." *MJR*, 792 S.W.2d at 575; *see also Messina v. State*, 904 S.W.2d 178 (Tex. App.—Dallas 1995, no pet.) (upholding *MJR* under doctrine of stare decisis). In *MJR*, the City presented expert testimony that physiological and sexual distinctions exist between male and female breasts, that female breasts differ both internally and externally from male breasts, and the female breast, unlike the male breast, is a mammary gland. *MJR*, 792 S.W.2d at 575. Based on this evidence, the court found that the City had proved that the definition did not discriminate *solely* on the basis of gender. *Id.* The *MJR* court never reached the second prong of the analysis to determine whether the definition was the only means to achieve a compelling state interest. Therefore, I disagree with *MJR*'s reasoning because, as I discuss below, this type of evidence does not show that a facially discriminatory ordinance does not discriminate solely on the basis of gender.

17. *Id.* at 297.

finding that the ordinance discriminated against females based solely on gender, the *Williams* court found that the City had not proved that the ordinance · was the *only* means of achieving a compelling state interest.[18] "[T]he City offered no evidence about ... how [physical and psychological differences between men and women] relate to the ordinance's goal of preventing secondary neighborhood effects."[19] Therefore, the court concluded that the ordinance violated TERA.[20] In particular, the Mandate in *Williams* declared:

> [i]t is ... ordered, adjudged and decreed that the judgment of the trial court is modified to reflect that section 1B(9)(c) of Ordinance No. 9957 of the City of Fort Worth is unconstitutional in its application to adult nightclubs and bars. Specifically, we declare that the following portion of the definition of "NUDITY OR STATE OF NUDITY" as applied to adult nightclubs and bars is unconstitutional and void: "c) Female breast or breasts below a point immediately above the top of the areola."

## THE APPLICATION OF THE LAW TO THIS CASE

In this case, the City presented evidence that male breasts are different from female breasts. The trial court accepted this evidence in the following Findings of Fact:

221. The Ordinances' differentiation between sexes exists on account of well-recognized physiological, psychological, and cultural differences between the male chest and the female breast.

222. Internal and external physiological differences exist between the female breast and the male chest.

223. Cultural reactions and norms differ between the exposure of the female breast as compared to exposure of the male chest.

224. Current cultural norms consider exposure of the female breast with no other attendant nudity as nudity.

225. Current cultural norms do not consider exposure of the male chest with no other attendant nudity as nudity.

226. Human sexuality differences exist between exposure of the female breast and the male chest.

Since submission, Fantasy Sports has filed an amended brief. In the amended brief they challenge the findings of fact individually.

### 1) Discrimination Based "Solely" on Gender

The City contends that the trial court's findings of fact require a legal conclusion that the definition of nudity does not discriminate based *solely* on gender. Rather, the City would have us find that "[t]he differentiation exists on account of well-recognized physiological, psychological, and cultural differences between the male chest and the female breast." Although I accept the trial court's findings of fact, I disagree with the City's contention.

*McLean* makes it clear that courts should look to the statute in question in determining whether it violates the first prong of the analysis. In *McLean,* the court took it upon itself to "examine the Family Code" sections at issue to determine whether they discriminate based solely on gender.[21] The court in *McLean* did not consider the State's evidence concerning the reasons for the discriminatory language until it reached the second prong of the analysis, *after it had found that the statute was discriminatory on its face.*[22]

At best, the City's evidence goes to prove that it has a "compelling" interest in regulating sexually oriented businesses. Such evidence does not apply to the first prong of the analysis where a court determines whether the discrimination is based solely on gender. As one court has noted, "*[a]ny* classification based upon sex is a suspect classification, and *any law or regulation* that classifies persons

---

**18.** *Id.* at 297–98.

**19.** *Id.* at 296 n. 2.

**20.** *Id.* at 298.

**21.** *In re McLean,* 725 S.W.2d at 697.

**22.** *See id.*

for different treatment on the basis of their sex is subject to strictest judicial scrutiny." [23]

Accordingly, I believe the section 18A definition of "nudity" is facially discriminatory because it singles out females for different treatment than males.[24] After having found that the CZO discriminates based solely on gender, the second prong of the analysis must be addressed to determine whether the discriminatory portion of the definition of nudity is the only means to achieve a compelling state interest.

### 2) Compelling State Interest

Because the City believes that Fantasy Sports has failed to prove that the section 18A definition of nudity does not meet the first prong of the analysis, i.e., that the distinction is not based solely on gender, it does not address the issue of whether the definition is the only means to achieve a compelling state interest. I disagree.

The trial court found that the gender classification was "required" to prevent the adverse secondary effects associated with sexually oriented businesses. While the City has a compelling interest in regulating sexually oriented businesses,[25] I cannot agree that the only means to achieve that goal is by preventing women from dancing topless while not preventing men from doing the same.

The City has failed to present evidence linking the distinction in the ordinance between males and females to stopping the negative secondary effects of sexually oriented businesses.[26] Under the ordinance, a bar featuring male dancers wearing only briefs would not come within the definition of sexually oriented business. As noted in *Williams*, "we have found no reason why banning bars which regularly feature either male or female topless dancers within the 1,000 feet limits would not effectively accomplish the City's goals." [27] Therefore, there is at least one other means to achieve the City's compelling interest in regulating the adverse secondary effects of sexually oriented businesses.

Because the City has produced no evidence that permitting topless males to dance while prohibiting topless females from doing so is the *only* means of controlling the adverse secondary effects of sexually oriented businesses, I believe that the City has not satisfied its burden to uphold the definition of

---

**23.** *Mercer v. Board of Trustees*, 538 S.W.2d 201, 206 (Tex.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (emphasis added).

**24.** *See Williams*, 782 S.W.2d at 297; *McLean*, 725 S.W.2d at 697; *see also Maloy*, 848 S.W.2d at 384 (facially discriminatory definition of "nudity" discriminatory as a matter of law).

**25.** I emphasize that to the extent that the City does have a compelling interest, it is not based on the physiological differences between men and women. As Justice Devany of the Dallas Court noted in his dissent in *Messina*, allowing evidence of the physical differences between men and women with no other evidence to defeat a TERA claim

> would ... allow the State to blow life into [a] facially unconstitutional statute by producing experts that can explain the flesh-and-blood composition of the female breast. Such proof is but a detailed biological explanation of one of the fundamental differences between men and women. Such an explanation of any difference between men and women does not change the concept of the Texas Constitution which *strictly* prohibits any legislation that would discriminate based upon gender....
>
> Compare, for example, a case where discrimination because of race is prohibited by

the Texas Constitution. Common sense tells us that no explanation of the composition or cause of skin pigmentation will save any statute that discriminates because of race.

*Messina*, 904 S.W.2d at 190 (Devany, J. dissenting).

**26.** I realize that the trial court entered a finding of fact that "a commercial business featuring the *exposure of the female breast relates to and* contributes to the adverse secondary effects that the Ordinances seek to control." But, this finding does not necessarily mean that no adverse secondary effects result from the exposure of a male chest in the context of a sexually oriented business.

> Further, this finding does not require a finding that creating a distinction between female and male topless dancing is the *only* means of achieving the compelling state interest.
>
> The trial court itself made findings of facts and law that discussed "[r]egulation of the location of sexually oriented businesses featuring nude or partially nude *male or female* entertainers." [Emphasis added.] Thus, even the trial court recognized the need to restrict sexually oriented businesses featuring both male and female "entertainers."

**27.** *Williams*, 782 S.W.2d at 297 n. 5.

"nudity" under the *McLean* analysis.[28] Accordingly, I would sustain Fantasy Sports's point of error four as to the provision defining nudity or state of nudity that relates only to the female breast.

## CONCLUSION

While recognizing the general authority of a city to regulate sexually oriented businesses through zoning ordinances, I would only hold that if the City is going to place zoning restrictions on businesses such as Fantasy Sports, it must do so in a gender neutral manner.

I also emphasize that I would not reverse the portions of the injunction requiring Fantasy Sports to obtain a SCO before operating a sexually oriented business in Fort Worth.

The trial court entered a conclusion of law that "[t]he *state of undress* of the female dancers performing at Respondents' business ... constituted 'nudity' ... under the terms and definitions of the Ordinances." [Emphasis added.] Noticeably, the court did not specify that only the exposure of breasts at Fantasy Sports constituted nudity; the finding that "all or substantially all of [the dancers'] buttocks" were uncovered leads me to believe that Fantasy Sports came within the definition of sexually oriented business because it featured nudity in the form of "less than completely and opaquely covered ... buttock(s)."[29] Although Fantasy Sports challenged the specific findings and fact or the finding of law that the dancers' "state of undress" constituted "nudity" in their amended brief, there is sufficient evidence to support the court's findings and conclusions. Since Fantasy Sports did not claim that the definition of nudity specifying "buttock(s)" violated any constitutional or statutory provision, I would leave the injunction intact.

Therefore, I would modify the judgment of the trial court with respect to Fantasy Sports's counterclaim for declaratory relief to reflect that section 18A(G)(19)(d) of Fort Worth's Comprehensive Zoning Ordinance, No. 3011, is unconstitutional because it discriminates against women in violation of the Texas Equal Rights Amendment, Tex. Const. art. I, § 3a. As modified, I would affirm the judgment of the trial court.

DAUPHINOT, Justice, concurring and dissenting.

I concur with Justice Livingston's concurring and dissenting opinion. I write only to clarify what I see as the effect of the majority opinion.

By holding "But we do not believe that justice or equality is served by application of TERA to an ordinance limiting the locations where female topless dancing is permitted," the court opts for selective application of amendments to our State Constitution. History has shown selective application of our Constitutions to be a dangerous practice.[1]

It should also be remembered that this case does not call for a judicial referendum on TERA. The voters have spoken on this issue and it is not our place to express our opinion. The question is whether the ordinance unlawfully discriminates against women. It is not whether this court can find some way to justify the discrimination.

The compelling governmental interest upon which this case is based is limiting the negative secondary effects of sexually oriented businesses. By its selective application of TERA, the majority finds that a woman who works topless and in blue jeans is engaging in a sexually oriented business, but a bare-breasted man who dances seductively in a revealing but buttocks-covering bathing suit is not. Indeed, a woman wearing an opaque blouse covering her breasts but exposing a cleavage is nude under the ordinance even though no portion of the nipple is exposed.

---

**28.** *See Williams,* 782 S.W.2d at 298; *McLean,* 725 S.W.2d at 698–99; *see also Maloy,* 848 S.W.2d at 384 (facially discriminatory ordinance would violate TERA where no evidence that discriminatory definition of "nudity" was *only* means to protect City's interest).

**29.** *See* City Code, Ord. 3011 § 18A(G)(19)(c).

**1.** *See generally* Gunnar Myrdal, An American Dilemma (1944) (a comprehensive pre*Brown v. Board of Education* study of the African–American, including an account of Jim Crow laws and their effects on U.S. society, sponsored by the Carnegie Corporation of New York).

The result of the definition of nudity based solely on gender is that, while women in low cut tops may not work within 1,000 feet of a church or daycare center, an establishment employing only topless male dancers may operate next door to a church or daycare facility.

I believe the government's interest in limiting secondary effects of sexually oriented businesses, not to mention justice, equality, and the Texas Constitution, would best be served by a gender-neutral definition of nudity, as mandated by TERA.

