COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 BRYAN S. FOSTER D/B/A JAGUAR’S GOLD CLUB,
  
                            
 Appellant,
  
 v.
  
 CITY OF EL PASO,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-10-00157-CV
  
 Appeal from the
  
 34th
 District Court
  
 of El
 Paso County, Texas
  
 (TC# 2007-2900)
  
 
 


 

                                                                  O
P I N I O N

Appellant, Bryan S. Foster doing business as
Jaguar’s Gold Club (Foster),[1]
appeals the trial court’s summary judgment in favor of the City of El Paso,
Appellee, stemming from Foster’s challenge to the constitutionality of the
City’s sexually-oriented business ordinance. 
Foster also appeals the trial court’s denial of his motion to strike the
City’s expert testimony.

BACKGROUND

In
November 2006, an adult cabaret owner was convicted of engaging in organized
criminal activity, which involved a prostitution ring operated out of her adult
cabaret.[2]  Thereafter, in the early part of 2007, the
City began investigating the conduct, licensing standards, and the negative
secondary effects of adult establishments in an effort to update its sexually-oriented
business ordinance.  The City looked at
25 federal judicial opinions issued by various courts, including the United
States Supreme Court and the Fifth Circuit Court of Appeals, that discussed the
negative secondary effects associated with sexually-oriented businesses.  The City also considered 21 municipal
land-use studies, crime reports, and affidavits that described the secondary
effects occurring in and around such establishments.  At a public meeting on April 23, 2007, the
City considered a presentation detailing the negative secondary effects
associated with sexually-oriented businesses, and heard numerous public
comments regarding the negative impacts of those establishments.

On
May 8, 2007, the City adopted a new sexually-oriented business ordinance (“the
ordinance”).[3]  The ordinance identified judicial opinions
and municipal studies upon which the City relied in adopting the ordinance, and
included a statement that the City found that sexually-oriented businesses are
associated with “a wide variety of adverse secondary effects,” which include “personal
and property crimes, prostitution, potential spread of disease, lewdness,
public indecency, obscenity, illicit drug use and drug trafficking, negative
impacts on surrounding properties, urban blight, litter, and sexual assault and
exploitation.”  The ordinance declared
that each of the foregoing negative secondary effects constitutes a harm
against which the City has a substantial government interest in preventing or
abating.  To address these concerns, the
new ordinance requires, in part, that sexually-oriented businesses have open,
instead of closed, booths for customers viewing sexually-oriented videos,
unobstructed employee views of the entire premises to which a patron is
provided access for any purpose, overhead lighting fixtures sufficient to
illuminate every place to which patrons are permitted, and employee licensing
for those working in such establishments.

On
June 20, 2007, Foster filed original and supplemental petitions seeking
declaratory and injunctive relief, attorney’s fees, and a jury trial of his
claims that the ordinance violates numerous constitutional provisions and state
law.  In twelve “counts,” Foster asserts that
the City’s sexually-oriented business ordinance violates the Texas Constitution[4] and is unconstitutional,
both facially and as applied, because it allegedly: (1)  abridges and restrains his rights to free
expression; (2) constitutes a prior restraint on such expression; (3) has an
impermissible chilling effect upon constitutionally-protected speech and
expression; (4) denies equal protection of the law; (5) is “arbitrary and
capricious as applied to [Foster’s] businesses;” (6) is an unlawful exercise of
the state’s police power because “there is no substantial relationship to the
protection of the public health and welfare or any legitimate governmental
objective, resulting in the fact that there has been no proper predicate for
the basis of the challenged legislation;” (7) is vague and indefinite and fails
to set out distinct criteria; (8) lacks adequate procedural safeguards; (9)
manifests an improper purpose in that the ordinance is not content-neutral and
not unrelated to the suppression of free speech; (10) contains restrictions
that are overbroad and far greater than are essential to the furtherance of the
alleged government interest; (11) grants unbridled discretion to administrative
officials in the enforcement of its provisions; and (12) was adopted without
competent, substantial evidence and the evidence upon which the City relied in
adopting the ordinance was not reasonably related to the perceived ills which
the City purported to address nor to any legitimate government objective.  

Foster
further complained that the ordinance lacks “any methodologically sound or
proper legislative basis or predicate, imposes an unreasonable and unnecessary
limitation on expression and constitutionally protected activities,” fails to
provide adequate alternative avenues of communication or to advance any
legitimate governmental interest, and is “unconstitutionally vague and overbroad”
in violation of the Texas Constitution.  Foster
brought the action to address the constitutional validity of the ordinance’s
provisions, asserted that the ordinance violates Sections 8, 19, and 29 of
Article 1 of the Texas Constitution and his rights thereunder, sought
injunctive relief from the enforcement of the ordinance’s provisions, and
sought a declaratory judgment finding the ordinance to be unconstitutional
because its provisions denies Foster’s rights to free speech and expression,
due process, equal protection, and adequate procedural safeguards as guaranteed
by the Texas Constitution.    

In
August 2007, the trial court held an extensive hearing on Foster’s motion for a
temporary restraining order.  With one
narrow exception that we need not address in resolving the matters before us,
the trial court denied the temporary restraining order based on “decisions by
Texas courts, the United States Supreme Court, and the United States Court of
Appeals for the Fifth Circuit [that] have repeatedly rejected constitutional
challenges to ordinances like the one at issue here . . . .”








            Following discovery, the City moved for summary judgment
on grounds that the ordinance was a constitutional regulation of the time,
place, and manner in which sexually-oriented businesses must operate in the
city.[5]  In support of its motion, the City
explained that the United States Supreme Court, the United States Court of
Appeals for the Fifth Circuit, and Texas appellate courts have rejected
constitutional challenges like those in Foster’s petition.

Foster
filed a lengthy response to the City’s motion for summary judgment, objected to
the City’s evidence, and attached expert evidence in support thereof.[6]  On March 10, 2010, the trial court granted
summary judgment in favor of the City.

DISCUSSION

In Issues One, Two, Three, Four, Six, and
Seven, Foster contends that the trial court erred in granting the City’s motion
for summary judgment.  In Issue Five,
Foster asserts that the trial court erred in denying his motion to strike the
City’s expert witness.

Standard of Review

We review a trial court=s decision to grant a motion for
summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); E.B.S. Enterprises, Inc. v. City of El Paso,
347 S.W.3d 404, 407 (Tex.App. – El Paso 2011, pet. denied).  Summary judgment is appropriate when there is
no genuine issue as to any material fact and judgment should be granted in
favor of the movant as a matter of law.  Tex. R. Civ. P. 166a(c); E.B.S. Enterprises, Inc., 347 S.W.3d at
407; Melendez v. Padilla, 304 S.W.3d 850, 852 (Tex.App. –El Paso 2010,
no pet.).  In determining whether there
are disputed issues of material fact, we take as true all evidence favorable to
the nonmovant and indulge every reasonable inference in the nonmovant’s
favor.  Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548-49 (Tex. 1985); E.B.S.
Enterprises, Inc., 347 S.W.3d at 407. 
“A defendant who conclusively negates at least one of the essential
elements of a cause of action or conclusively establishes an affirmative
defense is entitled to summary judgment.” 
Frost Nat. Bank. v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010).

            On appeal, we determine whether the
defendant, in seeking summary judgment, fulfilled his initial burden (1) to
establish as a matter of law that there remained no genuine issue of material
fact as to one or more essential elements of the plaintiff’s cause of action or
(2) to establish his affirmative defense to the plaintiff’s cause of action as
a matter of law.  Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); Casso
v. Brand, 776 S.W.2d 551, 556 (Tex. 1989); Nixon, 690 S.W.2d at
548–49; Miller v. LandAmerica Lawyers
Title of El Paso, 362 S.W.3d 842, 845 (Tex.App. – El Paso 2012, no pet.).

Constitutionality of the Ordinance

            When
reviewing the validity of a city ordinance, we presume the ordinance is
valid.  City of Brookside Village v. Comeau, 633 S.W.2d 790, 792 (Tex.
1982); Ex parte Woodall, 154 S.W.3d
698, 701 (Tex.App. – El Paso 2004, pet. ref’d).  A party attacking an ordinance bears an extraordinary burden
to show “that no conclusive or even controversial or issuable fact or condition
existed” which would authorize the municipality’s passage of the ordinance.  Comeau, 633 S.W.2d at 792–93.  If
reasonable minds may differ regarding whether a particular ordinance has a
substantial relationship to the public health, safety, morals, or general
welfare, no clear abuse of discretion is shown and the ordinance must stand as
a valid exercise of the City’s police power.  See Quick v. City of Austin, 7 S.W.3d
109, 117 (Tex. 1998).  If the evidence
reveals an issuable fact in this respect, the ordinance must stand.  Id.

            In its
summary-judgment motion, the City countered Foster’s claims that the ordinance
is unconstitutional by presenting a defensive claim that the ordinance is
constitutional in its entirety when scrutinized under the United States Supreme
Court’s analysis in United States v. O’Brien,
391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20
L.Ed.2d 672 (1968).[7]  The City renews its contentions in this
appeal.

            In United
States v. O’Brien, the United States Supreme Court established a
four-pronged test for the purpose of determining whether a government
regulation is justified and determined that a regulation does not impinge on
First Amendment freedom of expression if: (1) the regulation is within the
constitutional power of the government; (2) the regulation furthers an
important or substantial governmental interest; (3) if the governmental
interest is unrelated to the suppression of free expression; and (4) if the
incidental restriction on alleged First Amendment freedoms is no greater than
is essential to the furtherance of that interest.  Id.;
Fantasy Ranch Inc. v. City of Arlington,
Texas, 459 F.3d 546, 554 (5th Cir. 2006).

            If the government’s predominant purpose in enacting the
regulation is related to the suppression of symbolic speech, we apply a strict
level of scrutiny.  Fantasy Ranch, 459 F.3d at 554. 
However, we apply an intermediate level of scrutiny where the
government’s predominate purpose is unrelated to the suppression of expression,
that is, where the regulation is ‘“justified without reference to the content
of the regulated speech’ . . . .”   Fantasy Ranch, 459 F.3d at 554
(citations omitted).  When reviewing
government regulation of sexually-oriented businesses, courts routinely employ
intermediate scrutiny.  Fantasy Ranch, 459 F.3d at 555
(citations omitted).  Included
among the sufficient governmental interests that justify content-neutral
regulations are the prevention of harmful secondary effects and the protection of
morals and public order.  See City of Erie v. Pap’s A.M., 529 U.S.
277, 120 S.Ct. 1382, 1391-92, 1395-96, 146 L.Ed.2d 265 (2000); Barnes v. Glen Theatre, Inc., 501 U.S.
560, 566-69, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality).

            The City’s ordinance asserts an
interest in and is targeted to combatting the negative secondary effects of
sexually-oriented businesses.  Because
the City’s predominant purpose in enacting the ordinance is unrelated to the
suppression of First Amendment expression, we find the ordinance to be
content-neutral and subject to an intermediate degree of scrutiny.  Fantasy
Ranch, 459 F.3d at 554-58.

Application of the O’Brien Test

            Because the City’s
ordinance is content-neutral, we must apply the four-prong O’Brien test to determine whether it is a constitutional
restriction on symbolic speech under the First Amendment.  Fantasy
Ranch, 459 F.3d at 558.  We find that
it is.

Prong One

            The
enactment of the ordinance is clearly within the constitutional power of the
City Council because the ordinance is directed at protecting the health and
safety of its citizens, and the Supreme Court has recognized such effort as
being squarely within a City’s police powers. 
City of Erie 529 U.S. 277, 120
S.Ct. at 1395; Fantasy Ranch, 459 F.3d
at 558.  Thus, the City’s ordinance
satisfies the first prong of the O’Brien
test. 
O’Brien, 391 U.S. at 377, 88 S.Ct. at 1679.

Prong Two

            The second
prong of O’Brien encompasses two
distinct questions:  (1) whether there is
a substantial government interest; and (2) whether the regulation furthers that
interest.  City of Erie, 529 U.S. at 300, 120 S.Ct at 1396-97; Fantasy Ranch, 459 F.3d at 558.  A challenge to either of these questions
raises a question of evidence.  Fantasy Ranch, 459 F.3d at 559.  In making such evidentiary determinations, we
apply the standard set forth by the Supreme Court in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct.
925, 89 L.Ed.2d 29 (1986), as later modified by City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 451, 122
S.Ct. 1728, 1743, 152 L.Ed.2d 670 (2002); Fantasy
Ranch, 459 F.3d at 559.

            Under the Renton-Alameda standard, “a [city] may
rely on any evidence that is
‘reasonably believed to be relevant’ for demonstrating a connection between
speech and a substantial, independent government interest.”  Alameda
Books, 535 U.S. at 438, 122 S.Ct. at 1736 (plurality opinion); Renton, 475 U.S. at 51-52, 106 S.Ct. at
931 (emphasis added).  Such evidence may
include the experiences of other cities and detailed findings summarized in
judicial opinions, but a city is not required under the First Amendment, prior
to enacting its ordinance, “to conduct new studies or produce evidence
independent of that already generated by other cities . . . .”  Renton,
475 U.S. at 50-52, 106 S.Ct. at 930-31. 
A city’s own findings and its reasonable belief that the experience of
other jurisdictions is relevant to addressing the problem may provide a
sufficient evidentiary basis to meet this standard.  City of
Erie, 529 U.S. at 297, 120 S.Ct at 1395.  However, the Supreme Court has recognized that
the character of this evidence need not be local.  Renton,
475 U.S. at 50-52, 106 S.Ct. at 930-31; Schleuter
v. Fort Worth, 947 S.W.2d 920, 926-27 (Tex.App. – Fort Worth 1997, pet.
denied). 
Nor must secondary-effects evidence consist of empirical data or
scientific studies.  City of Erie, 529 U.S. at 300, 120 S.Ct. at 1397.

            A city’s
evidence must fairly support its rationale. 
Alameda Books, 535 U.S. at
438, 122 S.Ct. at 1736.  A city’s
rationale meets the Renton-Alameda
standard “[i]f plaintiffs fail to cast direct doubt on this [city’s] rationale,
either by demonstrating that the [city’s] evidence does not support its
rationale or by furnishing evidence that disputes the [city’s] factual findings
. . . .”  Alameda Books, 535 U.S. at 438-39, 122 S.Ct. at 1736, citing City of Erie, 529 U.S. at 298, 120
S.Ct. at 1395-96.  When a plaintiff
successfully casts doubt on a city’s rationale, the municipality bears the
burden of supplementing the record with evidence that will renew support for a
theory that justifies the municipality’s ordinance.  Alameda
Books, 535 U.S. at 439, 122 S.Ct. at 1736, citing City of Erie, 529 U.S. at 298-99, 120 S.Ct. at 1395-96.

            The record on
appeal contains evidence from the City’s experts, Professors George Tita,
Ph.D., and Richard McCleary, Ph.D, professors of criminology, who discuss and
explain that the negative secondary effects of sexually-oriented businesses are
well-established, such that there is a “statistically significant negative
impact with respect to the location of a sexually oriented business and the
surrounding community,” in part, because an abundance of people solicit
prostitution and drugs in relation to adult businesses.  Foster countered this evidence with reports
from Dr. Judith Lynne Hanna, whose expertise is in the field of dance, and Dr.
Randy Fisher, who is a social psychologist, each of whom presented opinions critical
of the analysis provided by the City’s experts. 
In a jointly prepared report, the City’s experts, Drs. Tita and
McCleary, criticize the analyses in and methodology of Dr. Hanna’s and Dr.
Fisher’s reports.

            In addition
to investigator affidavits reporting unsanitary conditions at more than eighteen
sexually-oriented businesses in El Paso, Texas, in 2007, the legislative record
presented to the El Paso City Counsel includes:  (1) judicial cases identifying the negative
secondary effects of sexually-oriented businesses and determining the
constitutional status of regulations enacted to address such effects; (2)
summaries of key reports concerning the negative secondary consequences of
sexually-oriented businesses; (3) at least twenty-one studies and reports from nineteen
cities and the State of Minnesota regarding sexually-oriented businesses and
their secondary effects; (4) the indictment, judgment, and verdict in an El
Paso County case where an adult cabaret owner was convicted of operating a
prostitution ring from her cabaret; (5) a 1986 El Paso, Texas report regarding
the effects of adult entertainment businesses on neighborhoods; and (6) a print
out of the April 23, 2007, presentation made to the El Paso City Council
regarding the secondary effects of sexually-oriented businesses.  Although not required to do so, the City took
into consideration expert and local evidence in addition to all of the
previously noted evidence.  Alameda, 535 U.S. at 439, 122 S.Ct. at
1736.  With this sufficient evidentiary
basis, the El Paso City Council clearly identified within its ordinance the targeted
negative secondary effects of sexually-oriented businesses.  See
Fantasy Ranch, 459 F.3d at 559.

            Joining in
the United States Supreme Court’s recognition that the “City Council is in a
better position than the Judiciary to gather and evaluate data on local
problems,” we find the City relied on legislative evidence reasonably believed
to be relevant for demonstrating a connection between speech and a substantial,
independent government interest upon which Foster has failed to cast direct
doubt, and that the City’s evidence fairly supports its rationale.  Alameda
Books, 535 U.S. at 438, 122 S.Ct. at 1736, citing City of Erie, 529 U.S. at 297-98, 120 S.Ct. at 1395-96; Renton, 475 U.S. at 51-52, 106 S.Ct. at
931.  Prong Two of O’Brien is satisfied.

Prong Three

            Under the
third prong of O’Brien, the City’s
interest must be unrelated to the suppression of free expression.  O’Brien,
391 U.S. 377, 88 S.Ct. at 1679; Fantasy
Ranch Inc., 459 F.3d at 554.  Because
we have already determined that the City’s interest is not related to the
suppression of free expression, Prong Three of O’Brien is satisfied.  O’Brien, 391 U.S. at 377, 88 S.Ct. at
1679; Fantasy Ranch Inc., 459 F.3d at
554.

Prong Four

            The fourth
prong of O’Brien requires that the
incidental restriction on alleged First Amendment freedoms be no greater than
is essential to the furtherance of an important or substantial government
interest.  O’Brien, 391 U.S. at 377, 88 S.Ct. at 1679.  To be well-tailored, an ordinance must effectively
promote the government’s stated interest while not infringing significantly
upon the protected conduct.  2300, Inc. v. City of Arlington, Texas, 888 S.W.2d 123, 128 (Tex.App. – Fort
Worth 1994, no writ).  As the City
correctly asserted in its summary-judgment motion, Article I, Section 8 of the
Texas Constitution provides no greater protection than the First Amendment
right to freedom of expression.  Id. at 127.

            The El Paso
ordinance does not prohibit expressive conduct but includes regulations
requiring the licensing of sexually-oriented businesses, restricting operation
of such businesses between the hours of 2 a.m. and 6 a.m., requiring
illumination of the internal and external premises and line-of-sight
requirements between employees and patrons, signage requirements, loitering
restrictions, a provision prohibiting nudity, a requirement that employees who
appear in a semi-nude condition maintain a distance of six feet from patrons
while the employee is on an eighteen-inch stage, and restrictions barring
persons under the age of 18 years from employment or patronage at such
businesses.

            We find the
ordinance strives to target secondary effects while leaving substantially
intact the quantity and accessibility of speech.  Alameda
Books, 122 S.Ct. at 1742.  Moreover,
the ordinance’s incidental restriction on First Amendment freedoms is no
greater than is essential to the furtherance of the important or substantial
government interest.  O’Brien, 391 U.S. at 377, 88 S.Ct. at
1679.  We conclude that the City’s
ordinance satisfies the fourth prong of O’Brien.  Because the ordinance satisfies the
four-prong O’Brien test, we find the
City’s ordinance is not a constitutional restriction on symbolic speech under
the First Amendment.  Fantasy Ranch, 459 F.3d at 558.

Issues

We now turn to Foster’s summary-judgment
based complaints.  In Issue One, Foster
complains that the trial court’s grant of summary judgment was erroneous
because the City failed to meet its summary-judgment burden of proof.  In support of this issue, Foster first
asserts that the City failed to establish as a matter of law that there was no
genuine issue of material fact as to at least one essential element of each of
Foster’s claims as a matter of law and summary judgment was, thus,
precluded.  See Tex. R. Civ. P.
166a.  Without direct or analogous citation
to authority, Foster then asserts that a full evidentiary evaluation in a trial
setting is required to determine the sufficiency and efficacy of the restrictions
imposed by the ordinance.

Relying upon the Fifth Circuit’s opinion in Basiardanes v. City of Galveston, 682
F.2d 1203, 1213-14 (5th Cir. 1982), Foster argues that mimicking other sexually-oriented
business ordinances upheld as constitutional provides an insufficient basis for
the City’s purportedly conclusory assertion that its ordinance is valid under
the rules of evidence and also contends that the City was required to establish
the efficacy of the ordinance’s restrictions.

First, Foster misrepresents the City’s
summary-judgment burden.  When the
validity of an ordinance is challenged, as here, summary judgment is
appropriate where the justification for the ordinance is even fairly
debatable.  Baccus v. City of Dallas, 450 S.W.2d 389, 391-92 (Tex.Civ.App. – Dallas
1970, writ ref’d n.r.e.) (summary judgment of valid ordinance proper).

We also find Foster’s reliance upon the
Fifth Circuit’s opinion in Basiardanes v.
City of Galveston, a case abrogated four years later by the Supreme Court in City of Renton v. Playtime Theatres, Inc.,
to be misplaced.  City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct.
925, 89 L.Ed.2d 29 (1986).  In Renton, the Supreme Court determined that
the Washington court of appeals erred in ruling that the City of Renton’s
ordinance addressing its zoning interests was enacted without benefit of the
city conducting its own studies relating to Renton’s particular problems and
needs and that the city’s justifications for its ordinance were ‘“conclusory
and speculative.’”  Renton, 475 U.S. at 50, 106 S.Ct. at 930-31 (internal citations
omitted).  The Supreme Court instead held
that a city is entitled to rely on the experiences of other cities in enacting,
in that case, an adult-theater zoning ordinance, and that the First Amendment
does not require that a City conduct new studies or produce independent
evidence before enacting content-neutral time, place, and manner regulations to
address the undesirable secondary effects of sexually-oriented businesses “so
long as whatever evidence the city relies upon is reasonably believed to be relevant
to the problem that the city addresses.” 
Renton, 475 U.S. at 51-52, 106
S.Ct. at 931.

Drawing upon the Supreme Court’s reasoning
in Renton, and Justice Kennedy’s
subsequent concurring opinion in City of
Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 451, 122 S.Ct. 1728, 1743,
152 L.Ed.2d 670 (2002), the Fifth Circuit has more recently determined that
courts are not empowered “to second-guess the empirical assessments of a
legislative body, nor . . . expected to submit such assessments to a jury for
re-weighing . . . .”  Fantasy Ranch Inc., 459 F.3d at 561, citing Renton, 106 S.Ct. at 931 and Alameda Books, Inc. 122 S.Ct. at 1743
(Kennedy, J., concurring).  Thus, Foster’s
argument that a full evidentiary trial is required fails under this authority.

Foster’s assertion that the efficacy of the ordinance’s
restrictions must be determined at trial likewise fails.  As part of its analysis in Ben’s Bar, Inc. v. Village of Somerset,
316 F.3d 702, 721 (7th Cir. 2003), the Seventh Circuit, in addressing Justice
Kennedy’s concurring opinion and the Supreme Court’s plurality opinion in Alameda, recognized that while a municipality’s rationale must be premised upon the
theory that its ordinance may reduce the costs of secondary effects, the
municipality need not prove the efficacy of its rationale prior to
implementation of the ordinance.

            Foster generally
asserts that the City’s statements in support of its summary-judgment motion
are nothing more than conclusory, and that the City’s expert affidavits contain
hearsay within hearsay and “are simply not sufficient to base a summary
judgment upon” because his own experts established that “any researcher or
legitimate social scientist” would admit that the City’s expert reports are
without scientific validity.  Foster
fails to identify any statement within the City’s summary-judgment motion or supporting
evidence which is conclusory or hearsay. 
Foster also fails to provide citation to any portion of the appellate record
where such statements exist.[8]
 Thus, Foster’s hearsay and conclusory-statement
complaints are inadequately briefed.  Tex. R. App. P. 38.1(i); see Valadez
v. Avitia, 238 S.W.3d 843, 845 (Tex.App. – El Paso 2007, no pet.) (an
appellate court has no duty, or even right, to perform an independent review of
the record and applicable law to determine if there was error).

Foster contends that the City circumvented
the legal requirements of proving its summary-judgment motion with admissible
evidence as would be required at trial, such as affidavits, depositions,
interrogatories, and other discovery.  Again,
Foster does not specify the summary-judgment evidence about which he complains,
does not set forth the reasons why that evidence is inadmissible under the
rules of evidence, does not cite in his argument the rules of evidence which
would bar such evidence, and does not cite or to any portion of the record
where such offensive evidence may be found. 
Tex. R. App. P. 38.1(i);
see Valadez, 238 S.W.3d at 845.  Issue
One is overruled.

In Issue Two, Foster asserts that the trial
court’s summary judgment was erroneous because it allegedly “placed
significance on the earlier decision” regarding Foster’s request for a
temporary restraining order.  Without
citing to the record, Foster asserts that the trial court’s rejection of his
attempts to obtain preliminary injunctive relief, and its conclusion that he
could not demonstrate neither a probable right to the relief sought, nor a
legally-cognizable injury should have had no impact on his right to a trial on
the merits of his claims.

Foster fails to set forth a cogent argument with
proper citation to the record and an analysis identifying how the trial court,
in granting the City’s motion for summary judgment, placed significance upon
its previous denial of his request for a temporary restraining order or
preliminary injunctive relief.  Instead, Foster
complains that “it is doubtful that any City legislator even looked at the over
1,600 pages” that comprise the record, that the record is deficient because it contains
some studies that another jurisdiction deemed unreasonable to rely upon and
were not relevant to local conditions, and that the record fails to show that the
legislation has a remedial effect.  Foster
also complains that the City recruited an advocate who has assisted “scores of
communities seeking to restrict sexually oriented businesses,” instead of
compiling local evidence.

An issue presented in an appellant’s brief
is sufficient if it directs the reviewing court’s attention to the
complained-of error but when a party fails to cite legal authority or provide a
substantive analysis of the legal issue presented, the complaint is
waived.  See Tex. R. App. P.
38.1(i); Valadez, 238 S.W.3d at 845. 
Because Foster provides no analysis regarding his complaints about the
trial court’s allegedly improper reliance upon its prior temporary-restraining
order decision, we find that he has waived this issue.  Id.  We have resolved against Foster’s contention
that the City was required to show the ordinance’s efficacy, and we need not
address it again.  Issue Two is
overruled.

In Issue Three, Foster asserts two bases for
challenging the trial court’s grant of summary judgment.  Foster first complains that the City failed
to conclusively prove all elements of its defenses to Foster’s constitutional
challenges.  Foster also argues that the
summary-judgment evidence showed that genuine issues of material fact existed
regarding the City’s arguments.

Foster specifically contends that:  (1) the City could not possibly disprove or
prove such elements because of “the conflicting nature” of the expert-witness
reports; (2) the City failed to provide the trial court “with a proper
framework for the evaluation of constitutional challenges;” (3) it is “well-settled”
that ordinances regulating adult entertainment are content based unless it is
shown that the legislation is designed to target the secondary effects of adult
businesses; (4) it is “ridiculous to automatically assume such restrictions
will reduce crime or protect property values;” (5) the ordinance is a total ban
on expressive nudity and of all persons convicted for certain offenses; (6) the
ordinance cannot be shown to advance a governmental interest absent a trial; and
(7) the content-neutrality construct is a “ridiculous fiction” and the
“secondary effects” construct is a pretext that has “done violence to the First
Amendment rights of affected individuals since its inception.”

Only one of these contentions, that the
government’s interest must be demonstrated at trial, is supported by citation
to authority.  After acknowledging that Renton does not require the City to
conduct new studies or produce evidence that is independent of other cities’
evidence and studies as long as the evidence upon which the City relies is
reasonably believed to be relevant to the problems that the City is attempting
to address, Foster states, “This is where the dispute lies,” and again proceeds
to argue that the trial court should have required the City to prove “the
validity of the legislative predicate” at trial under “appropriate evidentiary conditions.”  Foster contends that “[n]umerous authorities
also indicate the error of granting summary judgment in these types of
contested proceedings,” but fails to provide any citation to the “numerous”
authorities in support of this proposition.

Foster does not cite to the record or
provide any substantive analysis specific to the record or ordinance before us to
demonstrate how the City failed to prove all elements of its defenses to his
constitutional challenges or how the summary-judgment evidence showed that
genuine issues of material fact exist.  See Tex.
R. App. P. 38.1(i); Valadez, 238 S.W.3d at 845.  Issue Three is overruled.

In Issue Four, Foster contends that the
summary judgment in favor of the City was erroneous because the City’s experts relied
upon flawed and unreliable research methodology.  Without citation to authority, Foster asserts
that “summary judgment is not favored in adult entertainment cases.”  Foster fails to discuss how the research
methodology is flawed and instead notes that “it is simply not appropriate to gauge
these factual disputes in a summary judgment.”  Foster cites a footnote passage from Peek-A-Boo quoting Alameda Books for the standard that the government is required to
“advance some basis to show that its regulation has the purpose and effect of
suppressing secondary effects, while leaving the quantity and accessibility of
speech substantially intact.”  Peek-A-Boo Lounge of Bradenton, Inc. v.
Manatee County, 337 F.3d 1251, 1267 n.15 (11th Cir. 2003), quoting Alameda Books, 122 S.Ct. at
1742. (Kennedy, J., concurring).

Foster asserts that the City’s experts “admitted”
the absence of evidence to show that similar legislation adopted in other
jurisdictions had any beneficial impact on the alleged problems the legislation
was designed to prevent.  Based upon recitations
in his brief, Foster contends that the legislative and court records present no
evidence to show any connection between the ordinance and the secondary effects
it was enacted to address, that there is grave doubt that the City’s reliance
upon “the studies and cases referenced” in the ordinance is reasonable, and
that the ordinance is neither narrowly tailored nor serves a substantial
governmental interest.

Foster has failed to address the flawed and unreliable
research methodology argument upon which he bases his fourth issue.  As we have recognized, a City is not required
to conduct new studies nor must it produce evidence that is independent of that
produced by other cities.  Renton, 475 U.S. at 51, 106 S.Ct. at 931;
Alameda Books, Inc., 535 U.S. at
438-39, 122 S.Ct. at 1736; City of Erie,
529 U.S. at 297-98, 120 S.Ct. at 1395.  A
city is permitted to rely upon any evidence that is reasonably believed to be
relevant to its goal of preventing the negative secondary effects of
sexually-oriented businesses and is not required to pre-prove the efficacy of
legislation designed to fulfill that purpose. 
Alameda Books, 535 U.S. at 438,
122 S.Ct. at 1736; see also World Wide
Video of Washington, Inc. v. City of Spokane, 368 F.3d 1186, 1195-96 (9th
Cir. 2004) (both anecdotal evidence and reported experience may provide a
legitimate basis for finding negative secondary effects); Daytona Grand, Inc. v. City of Daytona Beach, 490 F.3d 860, 880 (11th
Cir. 2007) (a city may, but is not required, to justify its ordinances with
scientific studies or empirical evidence).

The record contains evidence the City may
have reasonably believed to be relevant to its goal of preventing the negative
secondary of the businesses through the regulations adopted in its
ordinance.  No less than three of the
studies relied upon by the City were aimed at sexually-oriented businesses’
operations in urban areas.

Before passing an ordinance that required a
line-of-sight for video booths in Phoenix, the municipality’s study concluded
that sex crimes occurred six times as frequently in areas with adult businesses
as compared with other areas, and that most of those crimes occurred at the
adult establishment.  See Ellwest
Stereo Theatres, Inc. v. Wenner, 681 F.2d 1243, 1245 (9th Cir. 1982)
(upholding ordinance requiring that all viewing areas must be visible from a
continuous main aisle and cannot be obscured by a curtain, door, wall, or other
enclosure).

Similarly, after its study reflected
prostitution and blatant open sexual contact between people with complete
anonymity in adult bookstores, as well as public lewdness, narcotics-related
offenses, and criminal indecent exposure in adult cabarets, the City of Houston
passed an ordinance regulating lighting and visibility, and banning private
viewing areas.  See N.W. Enterprises
Inc. v. City of Houston, 352 F.3d 162, 172 (5th Cir. 2003) (upholding
ordinance’s provisions on interior lighting, design, and layout).

Before enacting an ordinance regulating
adult businesses’ hours of operation, the City of Dallas learned from its study
that adult businesses experience higher crime in the area, loitering by
unsavory people, including prostitutes, and parking problems, noise, disturbances
that often turn violent, and an increase in the occurrence of sexual offenses, assaults,
and unruly behavior both inside and outside of the establishments, requiring
police presence.

Although not required to consider local
evidence, the City did so before enacting the ordinance.  Investigator Raul Acosta investigated,
obtained, and presented evidence of unsanitary conditions at a number of El
Paso sexually-oriented businesses in El Paso. 
By affidavit, Acosta stated that he had examined with a blacklight the doors
and walls of private booths at various adult establishments, where he observed
within the booths stains consistent with acid phosphate, an enzyme that is
present in human semen, and observed soiled tissues outside the premises, on
interior floors, and in containers. 
Acosta explained that when he entered booths and bathrooms at some of
the establishments, other patrons watched him and attempted to enter the area
that Acosta was occupying, even if the area displayed a sign or light
indicating that the booth was occupied.  When
Acosta visited several adult cabarets, dancers offered and agreed to perform sexual
acts in exchange for payment.








We find the City reasonably relied on
relevant studies, its on-going experience, and public comment when adopting the
new sexually-oriented business ordinance. 
See Renton, 475 U.S. at 51-52, 106 S.Ct. at 930-31
(municipality may rely on any evidence “reasonably believed to be relevant”); Fantasy
Ranch Inc., 459 F.3d at 559 (noting that city relied on studies and
numerous court opinions “all of which demonstrate a connection between
dancer-patron touching and unsavory secondary effects”).  That evidence fully supported the City’s rationale
for regulating sexually-oriented businesses and was legally sufficient to
support the City’s adoption of the ordinance. 
Accordingly, we find that there was no genuine issue of material fact regarding
whether the City had met its evidentiary burden to demonstrate that the
ordinance was necessary to combat secondary effects of Appellants’ adult
entertainment establishments. Issue Four is overruled.

In Issue Five, Foster contends the trial
court erred in denying his motion to strike the opinions of the City’s experts,
Drs. Richard McCleary and George E. Tita, “pursuant to Rule 702 of the Texas
Rules of Evidence, Daubert v. Merrell Dow
Pharms., Inc. . . . and its progeny, and E.I. du Pont de Nemours & Co. v. Robinson . . . and its
progeny, and other Texas state court authorities.”[9]  See
Daubert v. Merrell Dow Pharms., Inc. 509 U.S. 579, 590-92, 113 S.Ct. 2786,
125 L.Ed.2d 469 (1993); E.I. du Pont de
Nemours & Co. v. Robinson, 923 S.W.2d 549, 553-56 (Tex. 1995).  He likewise asserts that the arguments set
forth in his motion to strike such opinions also support his “position that
summary judgment was totally improper . . . .”

Foster bases his contentions upon the
assertion that the City’s experts relied on flawed and unreliable research
methodology to reach the conclusion that Foster’s business causes secondary
effects, and asserts that they raise a genuine issue of material fact.  Foster focuses primarily upon the efficacy of
the legislation in addressing the negative secondary effects of
sexually-oriented businesses, and challenges the admissibility of the experts’
testimony because they allegedly conceded that the ordinance’s regulations had
not been shown to be effective at reducing alleged disproportionate secondary
effects.  For the reasons set forth in
Issue Four as well as those that follow, we disagree.

In addressing this issue, we are faced with a
recitation of expert testimony for which there is no citation to the
record.  See Tex. R. App. P.
38.1(i); Valadez, 238 S.W.3d at 845. 
Also, Foster argues the City must address disproportionate secondary
effects rather than negative secondary effects. 
As previously noted, the City was permitted to rely on evidence
reasonably believed to be relevant to the goal of preventing the negative
secondary effects of sexually-oriented businesses but was not required to
specifically produce or rely upon expert-witness testimony.  Renton,
475 U.S. at 51-52, 106 S.Ct. at 931.  Assuming,
without deciding, that the City’s expert witnesses’ testimony should have been
excluded under Daubert and Robinson, “the relevant ‘material fact’
that must be placed at issue is whether the ordinance is supported by evidence
that can be ‘reasonably believed to be relevant to the problem.’”  Fantasy
Ranch, 459 F.3d at 561, citing Renton,
475 U.S. at 51-52, 106 S.Ct. at 931 (emphasis omitted); N.W. Enterprises, 352 F.3d at 180; Alameda Books, 535 U.S. at 451-52, 122 S.Ct. at 1743 (Kennedy, J.,
concurring); see also Daubert. 509
U.S. at 590-92, 113 S.Ct. at 2795-96; Robinson,
923 S.W.2d at 553-56.  We have found that
it is.

Foster has failed to demonstrate that the
trial court erred in denying his motion to strike the opinions of Drs. McCleary
and Tita for their reliance upon allegedly flawed and unreliable research
methodology.  Issue Five is overruled.

In Issue Six, Foster complains that the
trial court’s grant of summary judgment on his request for declaratory relief
was error.  Foster complains that the
City:  (1) did not set forth the burden
of proof for a declaratory judgment; (2) failed to address which essential
element of Foster’s claims it was disproving; and (3) instead of addressing
Foster’s claims, chose to seek summary judgment based on its pleaded affirmative
defenses and other pleas.  Noting that a
declaratory judgment is proper where a justiciable controversy exists regarding
the rights and status of parties and if the declaration will resolve the
controversy, Foster contends that a justiciable controversy exists because the
City adopted arbitrary and overreaching regulations that were based upon flawed
expert theories.  Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995).  According to Foster, the requested declaration
would have resolved the controversy because the trial court could have declared
the rights and obligations of the parties and committed error when it failed to
do so.

The trial court considered the City’s motion
for summary judgment which set forth the standards and elements for challenging
each of Foster’s constitutional claims, and the trial court found, as we have,
that the ordinance survives constitutional scrutiny.  Upon adjudication of those claims, no
justiciable controversy existed, and the trial court correctly denied Foster’s
request for declaratory relief.  Beadle, 907 S.W.2d at 467 (declaratory
judgment is appropriate only if a justiciable controversy exists as to the
rights and status of the parties and the controversy will be resolved by the
declaration sought); Schecter v. Wildwood
Developers, L.L.C., 214 S.W.3d 117, 121 (Tex.App. – El Paso 2006, no pet.).  Because the trial court did not err, Issue
Six is overruled.

In Issue Seven, Foster argues that the trial
court erred in granting summary judgment because the ordinance is
unconstitutionally overbroad and constitutes a prior restraint.  As we have already concluded that the
ordinance is constitutional under O’Brien
and is neither unconstitutionally vague or overbroad, we address Foster’s
prior-restraint complaint.

The City argues that Foster has waived this
issue because he failed to present or secure a ruling thereon in the
summary-judgment proceedings.  The Rules
of Civil Procedure provide that issues not expressly presented to the trial
court by written motion, answer, or other response shall not be considered on
appeal as grounds for reversal.  Tex. R. Civ. P. 166a(c).  Foster did not file his own motion for
summary judgment and in his summary-judgment response, Foster states that it is
premature to address prior restraint until an evidentiary hearing is
conducted.  Because these complaints as
raised on appeal were not brought to the trial court’s attention, we cannot
consider them.  Tex. R. Civ. P. 166a(c). 
Significantly, because the ordinance satisfies the O’Brien test, it is constitutionally sound.  O’Brien,
391 U.S. at 377, 88 S.Ct. at 1679.  Issue
Seven is overruled.

CONCLUSION

As Foster has failed to establish that the
trial court erred in granting summary judgment in favor of the City and in
denying his motion to strike the City’s expert witnesses, the trial court’s
judgment is affirmed.

 

                                                                        GUADALUPE
RIVERA, Justice

February 20, 2013

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

Antcliff, J., not participating











[1]
Jose F. Fong, doing business as Tequila Sunrise,
and Foster, as plaintiffs, initiated the proceedings.  Because Foster alone appeals the trial
court’s summary judgment order, we restrict our references to Foster.

 





[2]
See Woodall v. State, No.
08-07-00015-CR, 2011 WL 6748490, at *1 (Tex.App. – El Paso Dec. 22, 2011, no
pet.) (not designated for publication).

 





[3]
El Paso, Tex., Ordinance No. 016624 (May 8, 2007) as amended and codified in The
City of El Paso, Texas , Code of Ordinances ch. 5.09.





[4]
Appellant complains in “Counts” I, II, III, and X that the ordinance violates
Article I, Section 8 of the Texas Constitution, which provides:

 

Every person shall be at liberty to
speak, write or publish his opinions on any subject, being responsible for the
abuse of that privilege; and no law shall ever be passed curtailing the liberty
of speech or of the press. In prosecutions for the publication of papers,
investigating the conduct of officers, or men in public capacity, or when the
matter published is proper for public information, the truth thereof may be
given in evidence. And in all indictments for libels, the jury shall have the right
to determine the law and the facts, under the direction of the court, as in
other cases.  Tex. Const. art. 1, § 8.

 

In his remaining “Counts,” Appellant asserts without
specification that the ordinance violates the rights guaranteed him by the
Texas Constitution.





[5]
Even speech that is protected under the First
Amendment is not equally permissible in all places and at all times, and it may
be subject to reasonable time, place, or manner restrictions.  Snyder
v. Phelps, 131 S.Ct. 1207, 1218, 179 L.Ed.2d 172 (2011).

 





[6]
On November 27, 2007, four adult book-video
stores filed a separate but nearly identical suit challenging the City’s ordinance.  Their suit was consolidated with this
one.  In a separate appeal, we
affirmed the trial court’s summary judgment in favor of the City and against
the adult book-video stores.  E.B.S. Enterprises, Inc. v. City of El Paso,
347 S.W.3d 404, 413 (Tex.App. – El Paso 2011, pet. denied).





[7]
Claims by adult businesses that the ordinance regulating the time, place and
manner of conduct of business violated their freedom of speech rights are determined
under the same standard for both the United States and Texas Constitutions.  Woodall
v. City of El Paso, 49 F.3d 1120 (5th Cir.), cert. denied, 516 U.S. 988, 116 S.Ct. 516, 133 L.Ed.2d 425 (1995).





[8]
The clerk’s record contains more than 1,000 pages of documents.





[9]
Although Foster cites these cases, he fails to provide citation to the portions
of those cases that allegedly support his contentions at trial and on appeal.